UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDNA J. HAIR,<br><br>  Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security Administration,<br><br>  Defendant. | Case No. 3:17-cv-00559-HDM-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF Nos. 12, 13 |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 12.) The Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal. (ECF Nos. 13, 14.) Plaintiff filed a reply. (ECF No. 15.)

After a thorough review, the court recommends that Plaintiff's motion be granted; the Commissioner's cross-motion be denied; the Commissioner's decision finding Plaintiff not disabled be reversed, and the matter be remanded for further proceedings for the reasons set forth in this Report and Recommendation.

## **I. BACKGROUND**

On September 12, 2013, Plaintiff completed an application for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning September 3, 2009. (Administrative Record (AR) 241-246.) The application was denied initially and on reconsideration. (AR 166-175.)

///

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 176-178.) ALJ Ryan Johannes held a hearing on December 8, 2015. (AR 46-73.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). After the hearing, the ALJ sent interrogatories to the VE, and the VE provided responses. (AR 357-360, 363-366.) On March 8, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-38.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-6, 238-39.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff argues: that the ALJ erred in his step five determination because there was an apparent conflict between the VE's testimony that Plaintiff could perform jobs defined by the Dictionary of Occupational Titles (DOT) as requiring frequent overhead reaching (lens gauger (DOT 716.687-030) and table worker (DOT 739.687-182)), when Plaintiff was limited to occasional reaching with respect to the right upper extremity, and the ALJ failed to elicit a reasonable explanation for the deviation.

The Commissioner, on the other hand, argues that there was no apparent conflict between the VE's testimony and the DOT because it is not obvious from the DOT descriptions of the two jobs that they would require frequent bilateral reaching. The Commissioner also argues that Plaintiff waived the issue that there is a discrepancy between the reaching abilities and the DOT because she failed to raise it at the hearing or to the Appeals Council. The Commissioner maintains that the ALJ properly relied on the job information provided by the VE, and that substantial evidence supports the ultimate non-disability determination.

## II. STANDARD OF REVIEW

**A. Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;*

20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and

citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date of July 31, 2013. (AR 21.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: seizure disorder, major depressive disorder, post-traumatic stress disorder (PTSD), chronic thoracolumbar and bilateral sacroiliac joint pain, hypertension, diabetes mellitus, migraine headaches, obesity, and a history of asthma. (AR 21.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 22-25.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except she was limited as follows: she could stand for two hours, walk for one hour, and sit for six hours in an eight-hour work day; she could *occasionally* reach in all directions, push and pull with the right upper extremity; she could *frequently* reach in all directions,

1  push, and pull with the left upper extremity; she could frequently handle and finger bilaterally; she
2  could occasionally operate foot controls with the left lower extremity, and frequently with the right
3  lower extremity; she could occasionally climb stairs and ramps, balance, stoop, kneel and crouch;
4  she could not climb ladders or scaffolds or crawl; she is limited to work including a sit/stand option,
5  allowing her to shift from sitting or standing alternatively at will, provided she is not off task ten
6  percent or more of the work period; she must avoid concentrated exposure to extreme cold and
7  heat, vibrations, and fumes, dusts, odors, gases, and pulmonary irritants; she must avoid all
8  exposure to moving mechanical parts, and unprotected heights; she is able to understand,
9  remember, and carry out simple repetitive tasks and make simple work-related decisions that
10 require no interaction with the general public and only occasional interaction with co-workers.
11 (AR 25-26.)

12 The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 35.)

13 At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age,
14 education, work experience and RFC, there were jobs that existed in significant numbers in the
15 national economy that Plaintiff could perform, including: lens gauger (DOT 716.687-030) and
16 table worker (DOT 739.687-182). (AR. 37.) As a result, the ALJ found Plaintiff not disabled from
17 the date of the application July 31, 2013, through the date of the decision. (AR 37.)

18 **B. There Was an Apparent Conflict that Required the ALJ to Elicit a Reasonable**
19 **Explanation before Finding the Plaintiff not disabled**

20 It is undisputed that the DOT specifies that the jobs of lens gauger and table worker engage
21 in frequent reaching, and that Plaintiff was limited to reaching only occasionally with the right
22 upper extremity, but could reach frequently with the left side. Plaintiff contends that the ALJ erred
23 at step five because the ALJ relied on VE testimony Plaintiff could perform these jobs without
24 recognizing the apparent conflict with her RFC limitation to occasional reaching with the right
25 upper extremity and eliciting a reasonable explanation to rectify the conflict between the RFC
26 limitation and the DOT.

27 At step five, "the ALJ considers the applicant's background and [RFC], that is, what
28 physical tasks the applicant can still perform despite his or her limitations, to decide if the applicant

1  can make an adjustment to some other available job." *Gutierrez v. Colvin,* 844 F.3d 804, 806 (9th

2  Cir. 2016) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)).   "To aid in making this

3  determination, the ALJ may rely on an impartial [VE] to provide testimony about jobs the applicant

4  can perform despite his or her limitations." *Id*. at 806-07 (citing *Hill v. Astrue*, 698 F.3d 1153,

5  1161 (9th Cir. 2012)). The [DOT], a resource complied by the Department of Labor that details

6  the specific requirements for different occupations, guides the analysis." *Id*. at 807. "If the expert's

7  opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements

8  listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on

9  the expert to decide if the claimant is disabled." *Id*. (citing Social Security Ruling (SSR) 00-4P,

10  2000 WL 1898704, at * 2 (2000)).

11  　　　　In *Gutierrez*, the Ninth Circuit reiterated that the DOT "refers to 'occupations,' not to

12  specific jobs." *Gutierrez*, 844 F.3d at 807. "'Occupation' is a broad term that includes 'the

13  collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as

14  'generally performed.'" *Id*. (citing SSR 00-4P, 2000 WL 1898704, at *2-3). "Because of this

15  definitional overlap, not all potential conflicts between an expert's job suitability recommendation

16  and the [DOT]'s listing of 'maximum requirements' for an occupation will be apparent or

17  obvious." *Id*. at 807-08. "[A]n ALJ need only follow up on those that are." *Id*. at 808.

18
19
20
21
22
　　　　For a difference between an expert's testimony and the [DOT]'s listings to be fairly
　　　　characterized as a conflict, it must be obvious or apparent. This means that the
　　　　testimony must be at odds with the [DOT]'s listing of job requirements that are
　　　　essential, integral, or expected. This is not to say that ALJ's are free to disregard
　　　　the [DOT]'s definitions or take them with a grain of salt—they aren't. But tasks
　　　　that aren't essential, integral, or expected parts of a job are less likely to qualify as
　　　　apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a
　　　　familiar one—like cashiering—less scrutiny by the ALJ is required.

23  *Id*. at 808.

24  　　　　In *Gutierrez*, the claimant had an RFC that included a limitation regarding reaching

25  overhead with the right arm, and the cashier job identified by the VE had a DOT description that

26  said it required frequent reaching. The court found there was no apparent or obvious conflict

27  between the VE testimony she could perform the cashier job despite right-arm overhead reaching

28  limitations and the DOT's "general statement that cashiering requires frequent reaching." *Id*. The

1 court explained that "not every job that involves reaching requires the ability to reach overhead."
2 *Id*. Regarding the DOT statement that cashiering required "frequent reaching," the Ninth Circuit
3 said:

> [A]nyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to. To be sure, an ALJ must ask follow up questions of a [VE] when the expert's testimony is either obvious or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances. Had the expert opined that Ms. Gutierrez could stock shelves or wash windows, the conflict would have been apparent or obvious, and the ALJ would have needed to follow up with more specific questions. But where the frequency or necessity of a task is unlikely and unforeseeable—as it is with cashiers having to reach overhead—there's no similar obligation.

10 *Id*.

11 The court instructed, though, that "[t]he requirement for an ALJ to ask follow up questions
12 is fact-dependent." *Id*. at 809.

13 The Ninth Circuit addressed this topic again just eight months later, in *Lamear v. Berryhill*,
14 865 F.3d 1201 (9th Cir. 2017). There, the claimant's physical limitations included being able to
15 only *occasionally* handle, finger, and reach overhead with the left, non-dominant hand and arm,
16 but the claimant had no limitations to the right side. *Lamear*, 865 F.3d at 1203. The VE testified
17 that the claimant could not perform his past relevant work, but could still perform work as an office
18 helper, mail clerk, or parking lot cashier, even though the DOT stated that those jobs required
19 *frequent* handling, fingering and reaching. *Id*. The ALJ did not ask the VE to reconcile a potential
20 inconsistency between the limitations and the DOT job description, and the VE did not otherwise
21 explain how the claimant could do the work with the left hand and arm limitations. *Id*. at 1204.

22 In *Lamear*, the court discussed its decision in *Gutierrez*, and the holding that there was no
23 error "because, based on common experience, it is 'unlikely and unforeseeable' that a cashier
24 would need to reach overhead, and even more rare for one to need to reach overhead with both
25 arms." *Id*. at 1205 (citing *Gutierrez*, 844 F.3d at 808-09, and 809 n. 2). *Lamear* reiterated the point
26 made in *Gutierrez*, however, that the requirement to ask follow up questions is fact-dependent,
27 adding that "the more obscure the job, the less likely common experience will dictate the result."
28 *Id*. (citing *Gutierrez*, 844 F.3d at 808). The court noted that "[t]o avoid unnecessary appeals, an

ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Id*.

Unlike *Gutierrez*, the court in *Lamear* could not conclude that "based on common experience, it is likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties." *Id*. The court looked at the DOT descriptions for the jobs, and concluded they "strongly suggest that it is likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner." *Id*. The court pointed out that the DOT description for all three jobs required workers to frequently engage in handling, fingering, and reaching, "which means that these types of activities could be necessary for as much as two-thirds of the workday." *Id*. With nothing in the record to explain the apparent discrepancy between the claimant's limitations and the DOT, the court found it necessary to reverse and remand so that the ALJ could ask the VE to reconcile these jobs with the claimant's left-hand limitations.

In *Lamear*, the Commissioner argued that the failure to reconcile the conflict was harmless, "by presuming that the handling, fingering, and reaching requirements are unilateral since the DOT does not expressly state that they demand both hands." *Id*. at 1206. The court disagreed. The court found that the argument "assumes away the question of whether these requirements necessitate both hands," noting that issue had divided many courts. *Id*. at 1206, n. 4 (citing various cases where the DOT did not expressly state the occupations identified by the VE required frequent bilateral reaching, with some courts finding that VE testimony that a claimant limited to occasional reaching on one side created a potential conflict that needed to be reconciled, and others that found there was no conflict when the DOT descriptions did not indicate the jobs required bilateral reaching and handling). The court declined to issue a definitive ruling on that issue, but stated that it could not determine from the record, the DOT, or common experience whether the jobs required both hands so as to say the error was harmless. *Id*. at 1206.

Here, Plaintiff's RFC limited her to occasional reaching in all directions with the right upper extremity, but she could frequently reach in all directions with the left upper extremity. (AR 25-26.) These same limitations were in the hypothetical posed in the interrogatories to the

VE. (AR 357, 364.) The VE responded that an individual with these limitations could perform the lens gauger and table worker occupations. (AR 360.) The VE stated there were no conflicts between the occupational evidence provided, and the occupational information provided in the DOT. (AR 358, 359.) Despite this statement, the court must determine whether there was in fact a conflict that the ALJ was required to reconcile with a reasonable explanation before finding the Plaintiff could perform those jobs and was not disabled.

The DOT descriptions for lens gauger and table worker state that reaching and handling are required frequently (from 1/3 to 2/3 of the time). *See* DOT 716.687-030, 1991 WL 679466 (4th ed. rev. 1991); DOT 739.687-182, 1991 WL 680217 (4th ed. rev. 1991). The VE did not testify as to how Plaintiff could perform jobs with a DOT description indicating frequent reaching when she was limited to occasional reaching on the right side. As such, the court must consider whether the DOT descriptions or common knowledge of the jobs' requirements lead to a conclusion that the jobs did not require frequent bilateral reaching.

The DOT description for lens-block gauger is as follows:
Examines blocked lens to determine whether lens blanks are positioned evenly on block, using template. Positions template over blocked lens blank, holds assembly against light, and examines assembly to detect presence of light between blank and template indicating uneven positioning of lens blank on block.

DOT 716.687-030, 1991 WL 679466 (4th ed. Rev. 1991).

The DOT description for table worker is: "Examines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." DOT 739.687-182, 1991 WL 680217 (4th ed. Rev. 1991)

Neither of the DOT job descriptions shed any light on whether they could be performed by a person who could only reach frequently with the left upper extremity. The lens gauger has to position templates, hold an assembly against a light, and position the lens on a block. The court is unable to infer from this description how much reaching is involved, and whether it could be done with one (non-dominant) hand/arm, or if both upper extremities would be required. The table worker is required to replace missing and substandard tiles passing along on a conveyor belt, and the court cannot glean from this description whether both upper extremities are necessarily utilized. The descriptions for the two positions at least suggest that both upper extremities may be

necessary.

These jobs, unlike the cashier position in *Gutierrez*, are not so common that the court can determine from a general understanding of how they are performed that they would not require bilateral dexterity. Instead, the jobs are more obscure, which triggers the need for further questioning of the VE on the topic by the ALJ.

As in *Lamear*, here the court cannot determine from the record, the DOT, or common experience whether these jobs require the use of both upper extremities so as to conclude there was no conflict between the VE testimony and the DOT. The court recognizes that the ALJ did not have the benefit of *Lamear* and the Ninth Circuit's instruction that an ALJ should ask the VE to explain why there is no conflict between the claimant's RFC and the DOT, particularly with respect to more obscure jobs. If the ALJ had the benefit of *Lamear*'s guidance prior to the hearing, the outcome may have been different; but, under these circumstances, reversal and remand is warranted.

Insofar as the Commissioner argues that Plaintiff waived this argument by failing to raise it at the hearing or present it to the Appeals Council, the court in *Lamear* addressed a similar argument, and expressly concluded that "counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning[.]" *Lamear*, 865 F.3d at 1206, n. 5 (citing *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015), and citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (holding that the claimant "was not required to raise th[e conflict] at the hearing, because [SSR 00-4P] places the burden of making the necessary inquiry on the ALJ")). Contrary to the Commissioner's assertion, the ALJ is not absolved of the duty to reconcile conflicts simply because the VE states that his or her testimony is consistent with the DOT. *See Lamear*, 454 F.3d at 1205, n. 3 (citing *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2013)).

In sum, this Commissioner's decision should be reversed and the matter should be remanded so that the ALJ may question the VE regarding Plaintiff's ability to perform the identified jobs in light of her right upper extremity limitations.

///

///

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order: **GRANTING** Plaintiff's motion (ECF No. 12); **DENYING** the Commissioner's motion (ECF No. 13); **REVERSING** the Commissioner's decision finding Plaintiff not disabled, and **REMANDING** the matter so that the ALJ may question the VE regarding Plaintiff's ability to perform the identified jobs in light of her right upper extremity limitations.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: April 11, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE